**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JAMES LUCCHESI,<br><br>             Plaintiff,<br><br>v.<br><br>GUARANTY FUND  MANAGEMENT<br>SERVICES HEALTH AND WELFARE<br>PLAN, and, GUARANTY FUND<br>MANAGEMENT SERVICES,<br><br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 25-CV-10773-AK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff James Lucchesi ("Lucchesi") brings this action against Defendants Guaranty Fund Management Services Health and Welfare Plan ("GFMS' Plan") and Guaranty Fund Management Services ("GFMS").  Lucchesi alleges that GFMS wrongly denied Short-Term Disability Plan ("STDP") benefits without explanation. [Dkt. 1 ¶¶ 44-45, 48].  Lucchesi asserts that this Court has subject matter jurisdiction because the STDP benefits are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). [Dkt. 1 ¶¶ 1-2].  The Defendants move this Court to dismiss the case for lack of subject matter jurisdiction, claiming the STDP is not governed by ERISA. [Dkt. 12].  For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

I.      **BACKGROUND**

GFMS is a nonprofit organization that provides management and claims supervisory services to property and casualty insurance guaranty associations. [Dkt. 12-1 at 2].  Lucchesi

1

began working for GFMS in 2002, was promoted to manager in 2014, and became a workers' compensation claims supervisor for GFMS in 2018 until his departure on June 21, 2019. [Dkt. 1 ¶¶ 8, 22].

Beginning in 2019, Lucchesi struggled with worsening anxiety and sought medical advice from his primary care physician. [Dkt. 1 ¶ 10].  He subsequently applied for STDP benefits and was denied. [Id. ¶¶ 10-12].  Lucchesi's doctor then diagnosed him with acute situational stress disorder with emotional disturbance, situational anxiety, and mild depression. [Id. ¶ 13].  His doctor wrote a medical letter stating that they recommended Lucchesi take eight weeks off from work. [Id.].  With the medical letter, Lucchesi again sought STDP benefits to take off the eight weeks recommended by his doctor. [Id. ¶ 14].  GFMS denied the claim without explanation. [Id. ¶ 15].  Lucchesi then took unpaid leave, and upon returning, retired early. [Id. ¶¶ 17, 19-22].

Lucchesi brings four claims: (1) short term disability benefits under ERISA, (2) equitable relief under ERISA, (3) short term disability benefits under state common law, and (4) equitable relief under state common law. [Id. at 7-11].  GFMS filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. [Dkt. 12].  GFMS argues that Lucchesi's first two claims are not governed by ERISA, and that Lucchesi's third and fourth claims should not be heard under supplemental jurisdiction. [Dkt. 13 at 6-9].

GFMS' STDP  "provides short-term disability to cover extended absences from work due to a serious illness, injury or disability that is not work related." [Dkt. 1 ¶ 24].  To raise a federal claim, the STDP must, in fact, be covered by ERISA.  GFMS seemingly intended the STDP to be so governed: The plan states it is "intended to be an 'employee welfare benefit plan' within the meaning of ERISA Section 3(1)." [Dkt. 12-4 at 23].  However, the STDP also states that its

benefits are "self-insured" by GFMS and "will be paid solely from the general assets of GFMS." [Id. at 27]. In addition, the STDP provides certain employees with 100% of their income for up to the first ten weeks of absence, and 60% of their income for up to the next fifteen weeks. [Dkt. 1 ¶ 26]. The STDP further notes that GFMS is not "require[d] . . . to maintain any fund or segregate any amount for the benefit of any Participant" in its plan. [Dkt. 12-4 at 27]. Finally, the STDP's drafters refer to the STDP as "Self-Funded" and "self-insured." [Dkt. 14 at 6]. In her sworn affidavit, Linda A. Angelone, the Senior Vice President for the Human Resources & Compliance department of GFMS, claimed that GFMS, rather than "an insurance carrier[,] . . . directly paid all short-term disability benefits" "from GFMS'[] assets." [Dkt. 18 at 10]. Lucchesi does not challenge this assertion. [Dkt. 16 at 1].

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and thus, facing a 12(b)(1) motion to dismiss, the Court must ensure that it has the constitutional and statutory authority to adjudicate. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress." Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011). Courts "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002). The party claiming federal jurisdiction bears the burden of proving that such jurisdiction exists. Kokkonen, 511 U.S. at 377.

There are two types of 12(b)(1) motions challenging subject-matter jurisdiction: facial challenges and factual challenges. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). For facial challenges, the moving party asserts a question of law without challenging the complaint's facts. See Justiniano v. Soc. Sec. Admin., 876 F.3d 14, 21 (1st Cir. 2017). Akin to a 12(b)(6) analysis, the Court accepts as true the well-pleaded facts alleged in the complaint and assesses whether the plaintiff has plausibly established that the Court has subject matter jurisdiction. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). Alternatively, in factual 12(b)(1) challenges, the moving party "controvert[s] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff." Id.

For factual challenges, the Court must resolve the merits of the claim for jurisdiction as the factfinder, and thus the plaintiff's assertion of jurisdiction is no longer "entitled to . . . presumptive weight." Id. When "conducting this inquiry," courts have "broad authority" to "consider extrinsic evidence" such as affidavits. Id. A 12(b)(1) jurisdictional challenge is factual where, as here, the parties dispute the dispositive fact that the STDP is, in practice, entirely self-funded from GFMS' general assets and consequently not an ERISA-governed plan. See, e.g., Blank v. Progress Casting Grp., Inc., No. 02-CV-4155-DWF-SRN, 2003 WL 721673, at *2-3 (D. Minn. Feb. 26, 2003) (applying the 12(b)(1) "factual challenge" standard where the moving party was arguing "on the facts of this case" that "the [plan in question] [wa]s a payroll practice . . . exempt from ERISA," while the plaintiff alternatively "contend[ed] that the [plan in question] qualifie[d] as an ERISA plan."). "The question of whether an ERISA plan exists is 'a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.'" Wickman v. Nw. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (citing Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988)).

## III.    DISCUSSION

To establish subject matter jurisdiction, there must either be full diversity between the parties or a federal question at issue. 28 U.S.C. §§ 1331-1332. Lucchesi neither argues nor supplies facts to establish diversity jurisdiction. Thus, the Court must assess Lucchesi's claim of federal question jurisdiction under ERISA.

### A.  Federal Question Jurisdiction

ERISA grants district courts subject matter jurisdiction over claims brought by employees of private companies who were denied benefits under the companies' retirement or health plans, such as short-term disability plans, which constitute "employee welfare benefit plan[s]." 29 U.S.C. §§ 1132(e)(1), 1002(1), (3). However, plans are not governed by ERISA when they constitute "payroll practices" under the payroll practice exception. 29 C.F.R. § 2510.3-1(b)(2).

Congress enacted ERISA in 1974 to "safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." Massachusetts v. Morash, 490 U.S. 107, 112 (1989). The payroll practice exception aligns with this purpose, as the regular payment of employee wages is outside ERISA's intended scope. See id. at 119 ("The States have traditionally regulated the payment of wages," and thus courts are rightfully "reluctant to so significantly interfere."). Indeed, the risks of abuse that ERISA intends to protect against are minimal when the benefits are provided from a company's own general assets as opposed to a separate fund. See McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998) (finding that "[w]here an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits.").

Plans are payroll practices—not subject to ERISA—where they: (1) administer benefits "on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)," (2) provide payment as normal employee compensation, and (3) are self-funded from the employer's general assets. 29 C.F.R. § 2510.3-1(b)(2). As discussed below, it is of little question that the STDP is provided to address absences for medical reasons and that the STDP furnishes normal employee compensation. Thus, the heart of this issue is if Lucchesi plausibly demonstrates ambiguity as to whether the STDP is self-funded from general assets, as opposed to separate funds.

### 1. Absence for Medical Reasons and Normal Employee Compensation

The first two elements of the payroll practice exception are that the plan administers benefits for when an employee is physically or mentally unable to work and that it provides payment as normal employee compensation. Id. As to the first, the STDP "provides short-term disability to cover extended absences from work due to a serious illness, injury or disability that is not work related." [Dkt. 1 ¶ 24]. Lucchesi does not dispute that the STDP meets this element of the payroll practice exception. [See generally Dkt. 14].

As to the latter element, the STDP's benefits constitute normal employee compensation. The Department of Labor has generally advised, and courts have held, that plans provide normal employee compensation whenever they do not offer more than normal compensation but offer a significant percentage of employees' regular wages. See, e.g., Foster v. Sedgwick Claims Mgmt. Services, Inc., 842 F.3d 721, 726, 728-29 (D.C. Cir. 2016) (holding that a short-term disability plan was "clearly exempt from ERISA" where, inter alia, it constituted an employee's normal compensation since it offered 100% and then 60% of their wages); Bassiri v. Xerox Corp., 463

F.3d 927, 930 (9th Cir. 2006) (citing Dep't of Labor, Opinion 93–27A, 1993 ERISA LEXIS 29, at *6 (Oct. 12, 1993)) (ruling that the program in question provided normal compensation where it paid its recipients 65% of their normal salary and thus met the requirement of offering "either equal" or "a significant portion of[] an employee's normal compensation," while not "exceed[ing] an employee's normal compensation.").

The STDP offers 100% of some employees' salaries for up to ten weeks, along with 60% of those employees' salaries for up to an additional fifteen weeks. [Dkt. 1 ¶ 26]. Lucchesi offers no argument that such a payment structure is not akin to normal compensation, and thus, the second element is similarly satisfied.

### 2.    Self-Funded from the Employer's General Assets

The STDP is self-funded from GFMS' general assets, satisfying the final element of the payroll practice exception. According to its plan description, the STDP is "self-insured by GFMS" and "the benefits provided hereunder will be paid solely from the general assets of GFMS." [Dkt. 14 at 5]. Linda A. Angelone, GFMS' Senior Vice President for the Human Resources & Compliance department, swears in her affidavit that GFMS adheres to the STDP's language in practice, stating that GFMS "directly pa[ys] all short-term disability benefits" "from GFMS'[] assets." [Dkt. 18 at 10]. Lucchesi does not challenge this. [Dkt. 16 at 1].

Instead, Lucchesi raises two counterarguments. [Dkt. 14]. First, Lucchesi claims that while the STDP refers to itself as "self-insured," "the Group STD Coverage Feature provisions" instead identify the STDP as "Self[-]Funded," and that these "not necessarily synonymous" terms create ambiguity. [Id. at 6]. Second, Lucchesi argues that it is ambiguous as to whether the STDP is self-funded from GFMS' general assets. [Id. at 5]. The STDP states: "Nothing herein will be construed to require GFMS . . . to maintain any fund or segregate any amount for the

benefit of any Participant in this Plan." [Dkt. 12-4 at 27].  Lucchesi contends that, together with the GFMS Plan's stated intention to be covered by ERISA, GFMS not being "require[d]" to maintain a "segregate[d]" fund creates an ambiguity as to whether GFMS, in practice, administers STDP's benefits exclusively via its general funds. [Dkt. 14 at 4-5].

First, any distinction between "self-insured" and "self-funded" is irrelevant.  A plan paid out of the employer's general assets—whether it is self-funded or self-insured—is a payroll practice. See Bernard v. Comcast Comprehensive Health & Welfare Benefits Plan, No. 09-CV-02097, 2010 WL 5060201, at *3 (M.D. Pa. Dec. 6, 2010) (holding that evidence that the employer self-insures the plan by paying premiums is insufficient to contradict evidence that the plan is paid out of the employer's general funds); Polley v. Harvard Pilgrim Health Care, Inc., No. 08-CV-392-SM, 2009 WL 4403994, at *4 (D.N.H. Nov. 25, 2009) (ruling that "while plaintiff has produced various documents containing language suggesting" that the employer "purchased insurance to cover its short-term disability benefit, that language" does not demonstrate that the employer "actually paid short-term disability benefits with anything other than its general assets.").

As to Lucchesi's second claim, he argues that the stated intent to be covered by ERISA conflicts with the provided affidavit and other parts of the STDP establishing that it is self-funded from the employer's general assets. [Dkt. 12-4 at 27].  However, claiming an intent to be ERISA-governed and stating that GFMS is not required to provide STDP benefits in separate funds fall short of creating an ambiguity as to whether the STDP is administered by GFMS' general funds.

First, the First Circuit has explicitly stated that while a plan's asserted intent for ERISA governance weighs in favor of a finding for ERISA coverage, such intent is non-dispositive

8

where the plan otherwise functions as a payroll practice. McMahon, 162 F.3d at 38 (holding that while a plan's stated intent to be covered by ERISA "provide[s] a strong reason to find ERISA coverage[, w]e do not hold that an employer's mere labeling of a plan determines whether a plan is an ERISA plan, since this also could lead to a form of 'regulation shopping.'"); Stern v. Int'l Bus. Machines Corp., 326 F.3d 1367, 1374 (11th Cir. 2003) (citing to McMahon when noting that the employer's "mere labeling of the plan should not determine whether ERISA applies."); see also Langley v. DaimlerChrysler Corp., 502 F.3d 475, 481 (6th Cir. 2007) (finding that "merely labeling a particular benefit an 'ERISA plan'" is non-dispositive since "an employer could convert an otherwise exempt benefit into one covered under ERISA," and could thus "avoid state tort liability under ERISA-preemption doctrine.").  Accordingly, in contrast to its intended functioning, the *actual* "manner in which" the "short-term disability benefit was funded" is the "dispositive issue." Polley, 2009 WL 4403994, at *4.

Thus, where all three prongs of the payroll practice exception are met, the plan is not ERISA-governed, even if it claims to be. Parker v. Cooper Tire & Rubber Co., 546 F. App'x 522, 528-29 (5th Cir. 2014) (ruling that while the larger plan characterized the plan as ERISA-governed, they refused "to adopt [the plaintiff's] holistic approach" where the short-term benefit plan by itself fell within the payroll practice exception); Hansen v. Lab'y Corp. of Am., No. 24-CV-807, 2024 WL 4564357, at *3-5 (E.D. Wis. Oct. 24, 2024) (holding that the plan that paid normal compensation from the employer's general assets for an absence from work was a payroll plan, despite the employer portraying the plan as covered by ERISA); Monkhouse v. Stanley Assocs., Inc. Short Term Disability Income Plan for Emps. of Stanley Assocs., Inc., No. 09-CV-04125-EWJ, 2010 WL 1692450, at *3-5 (S.D. Tex. Apr. 26, 2010) (same); Bilheimer v. Fed. Exp. Corp., No. 08-80420-CIV, 2009 WL 1324202, at *3-4 (S.D. Fla. May 13, 2009) (same).

9

Altogether, courts have refused to insert an extratextual requirement into the payroll practice exception—that a plan that meets all three elements but classifies itself otherwise may not constitute a payroll practice.  The Court declines to add such a requirement here.

Second, circumstances in which other courts have found ambiguity do not exist here.  For example, in Marshall v. Whirlpool Corp, while an affidavit claimed that the benefits were paid out of the employer's general assets, the plan's description described an insurance company as the entity offering direct payment, creating an ambiguity. No. 07-CV-534-JHP, 2009 WL 1939922, at *1 (N.D. Okla. July 6, 2009).  Alternatively, here the STDP states that it is paid out of GFMS' general assets—rather than an insurance provider's assets—and the affidavit provided aligns with the plan's description. [Dkts. 12-4 at 27; 18 at 10]; see also Langley, 502 F.3d at 481 (finding a payroll practice where there was not "any evidence that the company partially funded benefits from a source other than general assets.").  Stating that GFMS is not required to segregate its funds, if anything, appears to emphasize that the STDP benefits are paid from the employer's general funds.  Moreover, the existence of a separate fund is insufficient evidence on its own anyways. See Alaska Airlines, Inc. v. Or. Bureau of Lab., 122 F.3d 812, 814 (9th Cir. 1997) (affirming summary judgment and clarifying that a plan is not ERISA-governed where the employer creates a separate trust for the plan if, while "focus[ing] on the actual methods of payment," the benefits are actually administered via the employer's general funds, and the trust only distributes reimbursement).

In light of the above, it is clear GFMS furnishes all of the STDP's benefits directly from its general assets, satisfying the final element.  Having fulfilled all three requirements of the payroll practice exception, GFMS' STDP is not governed by ERISA, and thus, the Court lacks subject matter jurisdiction over any such claims.

10

### B. Supplemental Jurisdiction

The Court can assert supplemental jurisdiction over state claims "so related" that they form the same case or controversy as the plaintiff's federal claims. 28 U.S.C. §1367(a). However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," and thus, "if the federal claims are dismissed before trial[,] . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  In line with this principle, the First Circuit has declined to exercise supplemental jurisdiction where the federal ERISA-based claims are dismissed for lack of subject matter jurisdiction early in litigation. O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 272 (1st Cir. 2001) (declining supplemental jurisdiction for a plan outside the scope of ERISA and noting that "[c]ourts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is dismissed early in the litigation."); see also Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass., 66 F.4th 307, 329 n.23 (1st Cir. 2023) ("Because we affirm the district court's dismissal of the Fund's ERISA claims, we also affirm the court's dismissal of the Fund's state-law claims upon declining to exercise supplemental jurisdiction.").

Accordingly, where this Court lacks subject matter jurisdiction because the plan in question is not ERISA-governed, it declines to exercise supplemental jurisdiction over the accompanying state law claims.  Declining jurisdiction is particularly appropriate at this early stage in the case.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 12] is **GRANTED**. Lucchesi's first two claims, for short term disability benefits and equitable relief under ERISA,

are **DISMISSED**.  The Court declines any exercise of supplemental jurisdiction in line with this holding and the state law claims are **DISMISSED WITHOUT PREJUDICE**.

      **SO ORDERED.**

Dated: March 11, 2026                                /s/ Angel Kelley
                                                Hon. Angel Kelley
                                                United States District Judge